**UNITED STATES of America,
Plaintiff,**

v.

**Thomas J. KIRSCHNER, Defendant.**

**Misc No. 09–MC–50872.**

United States District Court,
E.D. Michigan,
Southern Division.

March 30, 2010.

Matthew A. Roth, Patricia G. Gaedeke, U.S. Attorney's Office, Detroit, MI, for plaintiff.

## ORDER GRANTING DEFENDANT'S MOTION TO QUASH GRAND JURY SUBPOENA FOR DEFENDANT'S TESTIMONY BASED ON HIS FIFTH AMENDMENT PRIVILEGE AGAINST SELF–INCRIMINATION

PAUL D. BORMAN, District Judge.

### BACKGROUND

On December 10, 2009, the Federal Grand Jury issued an indictment charging Defendant Thomas Joseph Kirschner with three felony counts:

COUNT ONE: 18 U.S.C. § 2252A(a)(2)(A)—Receipt of Child Pornography on or about May 9, 2009, "including by computer."

COUNT TWO: 18 U.S.C. § 2252A(a)(2)(A)—Receipt of Child Pornography on or about June, 2009, "including by computer."

COUNT THREE: 18 U.S.C. § 2252A(a)(2)(A)—Receipt of Child Pornography on or about August 2009, "including by computer."

On November 20, 2009, an Assistant U.S. Attorney ("AUSA") issued a "subpoena to Defendant Kirschner to testify before a Grand Jury" on December 8, 2009. The subpoena required Defendant "to provide all passwords used or associated with the . . . computer . . . and any files."

On December 7, 2009, Defendant Kirschner filed a Motion to Quash Grand Jury Subpoena asserting Defendant's Fifth Amendment privilege against self-incrimination.

On December 22, 2009, the Government filed a Response, which stated in the accompanying brief:

In order to examine the contents of the encryption file, the government issued a grand jury subpoena ordering Defendant to provide all passwords associated with its computer.

(Gov't Br. in Response to Mot., p. 1.)

On February 11, 2010, Defendant filed a Reply.

On February 16, 2010, the Court held a hearing on the Defendant's Motion to Quash at which the Court raised an additional issue: use of grand jury, post-indictment, to acquire additional evidence in support of the prosecution, citing *United States v. Doss,* 563 F.2d 265 (6th Cir.1977) (en banc). The Court provided the parties with a two-week period to file a brief on that second issue. On March 16, 2010, both parties filed a supplemental brief.

### ANALYSIS

**I. Post–Indictment Grand Jury Subpoena.**

The Court concludes that the subpoena will not be quashed because, per government averment, it is being utilized post-indictment to investigate additional charges. The government recognizes that it cannot use the grand jury to secure

additional information on the charges contained in the indictment. Yet, the instant situation creates a murky factual situation.

The government concedes that the instant grand jury subpoena was issued to secure evidence of child pornography allegedly contained in Defendant Kirschner's computer, which spawned the three counts contained in the indictment:

> AUSA: [I]t's our position that the grand jury is still investigating the contents of the encryption file.
>
> COURT: It's the same computer.
>
> AUSA: It is the same computer.

(Hr'g Tr., Feb. 16, 2010, p. 10.)

The *Handbook on Criminal Procedure,* authored by Professors LaFave, Israel, King and Kerr, (2d ed. 2007), states the law in this area as follows:

> The grand jury is given its broad investigative powers to determine whether a crime has been committed and an indictment should issue, not to gather evidence for use in cases in which indictments have already issued. Accordingly, both state and federal courts hold that it is an abuse of the grand jury process to use grand jury subpoenas "for the sole or dominating purpose of preparing an already pending indictment for trial."
>
> \*   \*   \*
>
> Courts note that establishing a misuse claim is extremely difficult. "Absent some indicative sequence of event demonstrating an irregularity, a court has to take at face value the Government's word that the dominant purpose of the Grand Jury proceedings is proper." Not surprisingly, reported cases finding an improper purpose are rare. Though a few cases suggest that the potential for abuse is heightened where the grand jury post-indictment seeks evidence bearing upon the pending charge from an indicted person himself, the government can often point to the potential for

a superseding indictment involving further activity as a reason for seeking evidence from the indicted person.

(Vol. 3, pp. 219, 221–22).

The handbook cites the Sixth Circuit decision in *United States v. Doss,* 563 F.2d 265 (6th Cir.1977) (en banc), which held that it is an abuse of process to call an indicted defendant before a grand jury to question him about a crime for which he has been already indicted. The Sixth Circuit did, however, hold that a previously indicted defendant can be called before a grand jury to give evidence "upon a wholly different and separable offense." *Id.* at 277. The court specified that the subpoenaed indictee not be "questioned about the offense for which he stands indicted." *Id.* at 266.

> The Sixth Circuit emphasized in *Doss:*
>
> When a person under our system of law has been indicted for a crime, the government has no more right to call him before a grand jury and question him about that crime than it has to call an unwilling defendant to the stand during the trial of its case.

*Id.* at 275. The Sixth Circuit elaborated: "The function of the grand jury clearly terminates with the issuance of the indictment." *Id.* at 276.

Thus, the Court permitted questioning where the government is seeking evidence regarding a "wholly different and separate offense." *Id.* at 277. The AUSA says he will use the indicted defendant's testimony solely to pursue a different, separate offense.

At this stage, given the AUSA's averment, the Court concludes that the government is not prevented, under *Doss,* from using the grand jury to seek post-indictment testimony regarding "wholly different and separate offenses." Subsequent proceedings may be appropriate to deter-

mine the propriety of the government's post-indictment use of the grand jury.

In the instant case, the post-indictment grand jury questioning will relate to the same computer that provided the evidence for the existing charges, and likely the same type of criminal behavior. Does this evidence relate to a wholly different and separable offense? Stay tuned.

Accordingly, the Court denies Defendant's motion to quash the subpoena on the ground that the government is improperly issuing the grand jury subpoena post-indictment to secure additional evidence against Defendant on the charges contained in the instant indictment.

## II. *Grand Jury Testimony.*

The Court now proceeds to the next issue: Insofar as the subpoena is valid, can the Defendant refuse to testify based on his Fifth Amendment privilege against self-incrimination? Defendant contends that requiring him to testify before the grand jury pursuant to the subpoena issued by the government would violate his Fifth Amendment right against self-incrimination under the United States Constitution. The subpoena calls for the Defendant to testify to the password he utilizes for his computer. Defendant declines to testify invoking his Fifth Amendment privilege against self-incrimination.

The Court agrees with Defendant because the Supreme Court agrees with Defendant, as set forth in *United States v. Hubbell,* 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000).

The issue is whether requiring the Defendant to provide the password is a testimonial communication.

The AUSA described the requested testimony in these terms: "It's like giving the combination to a safe." (Def's Mot. Quash, Feb. 16, 2010, Hr'g Tr., p. 12). The Supreme Court has held that this type of procured testimony is protected by the Defendant's Fifth Amendment privilege.

The Court's examination of relevant Supreme Court precedent begins with *Doe v. United States,* 487 U.S. 201, 212, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1987):

An act is testimonial when the accused is forced to reveal his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the government.

In *Doe,* the issue was "whether a court order compelling a target of a grand jury investigation to authorize foreign banks to disclose records of his accounts, without identifying those documents or acknowledging their existence, violates the target's Fifth Amendment privilege against self-incrimination." *Id.* at 202, 108 S.Ct. 2341. The Court held that the Defendant's Fifth Amendment right was not implicated by the court order, because it did not require the Defendant to make a testimonial communication that is incriminating, citing *Fisher v. United States,* 425 U.S. 391, 408, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Significantly, the majority opinion stated in footnote 9:

We do not disagree with the [Justice Stevens] dissent that "[t]he expression of the contents of the individual's mind" is testimonial communication for purposes of the Fifth Amendment. We simply disagree with the dissent's conclusion that the execution of the consent directive at issue here forced petitioner to express the contents of his mind. In our view, such compulsion is more like "be[ing] forced to surrender a key to a strongbox containing incriminating documents," than it is like "be[ing] compelled to reveal the combination to [petitioner's] wall safe."

*Doe,* at 210, n. 9, 108 S.Ct. 2341 (citations omitted). As the Doe majority noted:

It is the "extortion of information from the accused," the attempt to force him to "disclose the contents of his own mind" that implicates the Self–Incrimination Clause.

*Id.* at 211, 108 S.Ct. 2341. In Doe, the Court pointed out that "neither the form nor its execution communicates any factual assertions, implicit or explicit, or conveys any information to the Government." *Id.* at 215, 108 S.Ct. 2341. In the instant case, forcing the Defendant to reveal the password for the computer communicates that factual assertion to the government, and thus, is testimonial—it requires Defendant to communicate "knowledge," unlike the production of a handwriting sample or a voice exemplar. *Id.* at 217, 108 S.Ct. 2341. Justice Stevens, in dissent in Doe, reiterated the point the majority discussed in its footnote 9:

> He may in some cases be forced to surrender a key to a strongbox containing incriminating documents, but I do not believe he can be compelled to reveal the combination to his wall safe—by word or deed.

*Id.* at 219, 108 S.Ct. 2341.

Justice Stevens wrote the majority opinion in *United States v. Hubbell*, 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000), which held that Defendant's assembly of documents, in response to the government grand jury subpoena, violated his privilege against self-incrimination, even though he had been provided with testimonial immunity with regard to the production of the documents.

Justice Stevens explained:

> The assembly of those documents was like telling an inquisitor the combination to a wall safe, not like being forced to surrender the key to a strongbox.

*Hubbell* at 2047.

In the instant case, even if the government provides Defendant with immunity with regard to the act of producing the password to the grand jury, that does not suffice to protect Defendant's invocation of his Fifth Amendment privilege in response to questioning that would require him to reveal his password.

In this case, the government is not seeking documents or objects—it is seeking testimony from the Defendant, requiring him to divulge through his mental processes his password—that will be used to incriminate him. The government has not provided Defendant with immunity pursuant to 18 U.S.C. § 6003(a).

Justice Stevens wrote in *Hubbell:*

> The act of exhibiting such physical characteristics [put on a shirt, provide a blood sample or a handwriting exemplar, or record his voice] is not the same as a sworn communication by a witness that relates either express or implied assertions of fact or belief.

*Id.* at 2043. This case is not about producing specific documents—it is about producing specific testimony asserting a fact. The *Hubbell* opinion further stated, directly relevant to the instant case:

> Compelled testimony that communicates information that may "lead to incriminating evidence" is privileged even if the information itself is not inculpatory. *Doe v. United States*, 487 U.S. 201, 208, n. 6, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988).

*Hubbell* at 2044.

Accordingly, the Court quashes the subpoena requiring Defendant to testify—giving up his password—thereby protecting his invocation of his Fifth Amendment privilege against compelled self-incrimination.

**SO ORDERED.**